**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

RECO MITCHNER,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

Civil No.  04-CV-10208-BC
Criminal No.  02-CR-20058-BC

DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE CHARLES BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**ON MOTION UNDER 28 U.S.C. § 2255**
**TO VACATE, SET ASIDE, OR CORRECT SENTENCE**
(Dkt. 36)

## I.    RECOMMENDATION

**IT IS RECOMMENDED** that Petitioner's motion under 28 U.S.C. § 2255 be **DENIED**.

## II.    REPORT

### A.    Introduction

Pending, pursuant to an Order of Reference from United States District Judge David Lawson (Dkt. 44), is the above-entitled motion filed under 28 U.S.C. § 2255 to vacate Petitioner's federal custodial sentence.  Respondent filed an answer opposing the motion, and after being granted an extension of time, Petitioner filed a reply.  (Dkts. 38 & 43.)  Mr. William Street, who represented Petitioner during the proceedings giving rise to this motion, also filed an affidavit. (Dkt. 40.)  Upon review, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

**B.      Procedural History**

On November 17, 2002, the grand jury returned a two-count indictment, charging Petitioner with the knowing and intentional possession of crack cocaine with the intent to distribute it. (Dkt. 1.) The Federal Defender's Office was initially appointed to represent Petitioner (Dkt. 5), and subsequently, Attorney William Street was retained by Petitioner. Following an initial pretrial conference, Mr. Street filed a motion to suppress evidence. (Dkt. 22.) The parties represent that Judge Lawson denied the motion to suppress (Ans., Dkt. 38 at 2), and Petitioner does not appear to contest this representation (Reply, Dkt. 43).

On May 23, 2003, a Rule 11 Plea Agreement was filed. (Dkt. 24.) The plea agreement provided that in exchange for a plea of guilty to Count 1, the government would dismiss the remaining count against Petitioner. The plea agreement included a stipulation to the effect that Petitioner agreed that, for sentencing purposes, he was accountable for drug amounts between 150 and 500 grams of crack cocaine and that he had committed this offense after a prior felony drug conviction had become final. (*Id*. at 2.) The parties agreed that Petitioner reserved the right to contest the government's scoring of a prior conviction for open intoxicants. The parties also agreed that Petitioner would not appeal the denial of his motion to suppress. Worksheets attached to the plea agreement indicate an adjusted offense level of 36 and a criminal history category of III. This prior criminal history included convictions for possession of marijuana, driving while license suspended, possession of cocaine, probation violation, and the earlier described conviction for carrying an open intoxicant in a vehicle. The guidelines indicated a sentencing range of between 168 and 210 months.

Prior to sentencing, a Presentence Investigation Report was prepared. Attorney Street filed three objections to the report, two of which dealt with the driving while license suspended ticket

and open intoxicant charge, with the third relating to acceptance of responsibility.  Prior to sentencing, Attorney Street also prepared a sentencing memorandum again raising many of these same issues.  (Dkt. 31.)  During this same period, the pretrial services officer requested a bond review hearing.  The hearing was held on June 25, 2003, and Attorney Street was present with Petitioner.  The hearing resulted in the revocation of Petitioner's bond for violation of bond conditions prohibiting the use of controlled substances.  (Dkt. 29.)

On September 4, 2003, Petitioner was sentenced by Judge Lawson to the low end of the applicable guideline range determined by Judge Lawson and given a sentence of 168 months incarceration.  (Dkt. 35.)  The instant motion was timely filed 11 months later.

Petitioner's motion sets forth five grounds for relief, all premised on ineffective assistance of counsel: (1) that counsel failed to file a direct appeal; (2) that counsel advised Petitioner to his detriment to plead guilty prior to the completion of drug treatment and a psychiatric evaluation; (3) that counsel stipulated that defendant would waive his right to appeal the denial of his motion to suppress; (4) that counsel failed to secure a stipulation that the drug quantities at issue were purchased by Petitioner for his personal use and not for distribution; and (5) that counsel failed to object to the court's imposition of a sentencing enhancement for obstruction of justice.  Petitioner contends that these actions caused him to receive a significantly longer sentence and violated his constitutional right to effective assistance of counsel.

### C.   Analysis and Conclusion

### 1.   Governing Law of § 2255

In order to prevail on a § 2255 motion, a petitioner must show a "fundamental defect which necessarily results in a complete miscarriage of justice or an egregious error violative of due process."  *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994).  A § 2255 motion is not a

substitute for a direct appeal.  When a petitioner raises a claim under § 2255 that he failed to raise at the appellate level, a court is generally precluded from reviewing the merits of such a claim unless a petitioner can show: (1) cause for his failure to raise the claim earlier in a direct appeal; and (2) actual prejudice stemming from the alleged violation.  *See Reed v. Farley*, 512 U.S. 339, 354-55, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994).  However, the Sixth Circuit has held that a post-conviction motion under § 2255 is the proper vehicle for raising claims of ineffective assistance of counsel in the first instance.  *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir. 2002) (citing *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir. 1990)).  Here, all of Petitioner's claims are of ineffective assistance of counsel.

In addition, where, as in this case, Petitioner's motion to vacate arises out of a plea, the United States Supreme Court has held that a guilty plea cuts off the right to challenge potential ineffective assistance occurring prior to the plea.  In *Tollett v. Henderson*, 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973), the Supreme Court held:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

(*Id*. at 267.)

## 2.   Governing Law of Ineffective Assistance of Counsel Claims

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  In *Strickland*, the Court enunciated a two-prong test that must be satisfied to prevail on an ineffective assistance of counsel claim.  First, the movant must show that counsel's performance

was deficient in that it fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Id*. It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id.* Rather, the movant must show that but for counsel's errors, the result would have been favorably different. *Id*. at 693. Although *Strickland* was decided twenty years ago, the Supreme Court recently reaffirmed that "the *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims." *Williams v. Taylor*, 529 U.S. 362, 391, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

The two-part test from *Strickland* also applies in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). To satisfy the prejudice prong of the standard, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

### 3. Ineffective Assistance of Counsel Claims

### a. Ground One – Failure to File Direct Appeal and Ground Three – Failure to Appeal Denial of Motion to Suppress

The Rule 11 Plea Agreement, signed by Petitioner and his counsel, mentions more than once Petitioner's right to appeal. In section three, entitled "Sentence Agreement," the parties stipulated that "the defendant will not appeal the denial of his motion to suppress the evidence seized pursuant to the state search warrant in exchange for being allowed to plead guilty to count 1 instead of count 2." (Rule 11 Plea Agreement, ¶ 3.)

More general agreements with regard to Petitioner's appellate rights are set forth in section

6, entitled "Defendant's Waiver of Appeal Rights":

> Defendant waives any right to file a direct appeal from the conviction or sentence, including any right under 18 U.S.C. § 3742 to appeal on the grounds that the sentence was imposed as a result of an incorrect application of the sentencing guidelines, except that defendant may appeal one or more of the following sentencing actions if defendant makes a timely objection (*e.g.*, a timely objection to the presentence report, where applicable): (A) the court's application of a provision in the sentencing guidelines if the application is contrary to the stipulation of the parties or the application of a provision that was unanticipated by the parties and adverse to the interests of the defendant; (B) the court's determination that a sentence for a prior offense identified on the attached worksheet C results in more criminal history points than defendant has agreed; (C) a decision by the court to impose a sentence consecutive to an undischarged term of imprisonment pursuant to U.S.S.G. § 5G1,3; (D) the court's denial of a two-level or three-level reduction for acceptance of responsibility; (E) the court's imposition of an enhancement for obstruction of justice; or (F) the following specified issue(s): <u>none</u>.

(*Id*. at ¶ 6.)

During the Assistant U.S. Attorney's summary of the plea agreement, given at the time of

Petitioner's plea, she stated:

> MS. PARKER:  And the fifth stipulation is the defendant will not appeal the denial of his motion to suppress the evidence seized pursuant to the state search warrant which the court ruled upon today, in exchange for being allowed to plead guilty to count 1 instead of count 2.

> That search warrant would relate only to count 2.

> . . . .

> There is an appeal waiver also which is set out in the plea agreement.

> THE COURT: And the appeal waiver deals with respect to sentencing issues, those issues which are not raised in a timely manner at the sentencing hearing and before, is that correct?

> MS. PARKER: That is correct. . . .

(Plea Tr., Dkt. 45 at 13.)

6

Turning to the Petitioner, the Court engaged him in the following colloquy:

>THE COURT: Thank you.  Mr. Mitchner, did you understand all of that?

A    Yes, sir.

>THE COURT: Do you have any questions about the terms of the plea agreement?

A    No, sir.

>THE COURT: All right.  Do you agree with those terms?

A    Yes, sir.

>THE COURT: Do you promise to be bound by them?

A.    Yes, sir.

>THE COURT: Have you had an opportunity to discuss this plea agreement with Mr. Street to your satisfaction?

A.    Yes, sir.

>THE COURT: You're clear on that?  You do not need anymore time to discuss it, is that right?

A.    No, sir.

(*Id*. at 15-16.)

In spite of these unequivocal statements, in a "Petitioner's Affidavit of Facts" contained in the instant motion, Petitioner states:

>I, RECO DONEL MITCHNER, swore and depose:

>(1) That on September 4, 2003, immediately following my sentencing hearing, and the judge advised me of my direct appeal rights, I unambiguously told my counsel, Mr. William Street, Esq., to file my Notice of Appeal and perfect my appeal.

>Counsel told me that the issues Petitioner wanted to appeal, (i.e. (a) Defendant will not appeal the denial of his motion to suppress the evidence seized pursuant to the state search warrant; (b) the imposition of an enhancement for

obstruction of justice; (c) the quantity of cocaine base attributed to Petitioner) cannot be appeal [sic] because I waiver my rights to direct appeal.

I reiterated my request to my counsel to appeal the foregoing issues because my appeal waiver was not intelligently and knowingly made. Counsel refused to file my appeal as I told him to do.

(Mot., Dkt. 36 at 7.)

However, Mr. Street states in his affidavit:

5. In response to the specific allegation of "Petitioner's Affidavit of Facts":

(1) There was an unambiguous agreement between Mr. Mitchner and myself NOT to file a Notice of Appeal and perfect any appeal issues both before, during and after Mr. Mitchner's sentencing on September 4, 2003. After the sentence was imposed, I received one telephone call from Mr. Mitchner on February 10, 2004 concerning the location of his closed case file (which is archived here at our law office). I also brought up the financial balance that was due for the trial level work that I had performed in that conversation.

(a) The Rule 11 agreement entered into specifically waived appeal of the pretrial Motion to Suppress evidence that was filed, argued, and denied by the court (Rule 11 agreement, ¶3(A)(5). Mr. Mitchner and I extensively discussed that the government had extended to him the option of a conditional plea on Count II preserving the right of appeal, versus entering an unconditional appeal on Count 1 of the indictment giving up that appeal right (which had the effect of substantially reducing his prospective sentence from 240 months to the midpoint range of 168-189 months, according to my notes). Petitioner's eventual 168 month sentence reflects that Mr. Mitchner got the full benefit of the unconditional plea option that we fully discussed and he decided to accept.

. . . .

Petitioner never "reiterated" any request to appeal anything, because it was expressly agreed that no appeal would be filed unless the sentencing Judge did not give Mr. Mitchner the benefit of his plea bargain. Petitioner got the full benefit, so no appeal was filed.

. . . .

(4) Reco Mitchner's plea and waiver of his right to direct appeal was made knowingly and intelligently and after full discussion with me as his legal counsel. He got the benefit of the Rule 11 agreement option he ultimately selected. I do not believe Mr. Mitchner was prejudiced in any way by my advice or the legal service

efforts that I rendered, given the facts, arrest particulars, and drug quantities involved in the government's case.

(Street Aff., Dkt. 40 at 2, 3, 5.)

The Sixth Circuit has held that a defendant may waive the right to directly appeal a conviction or sentence in a plea agreement. *United States v. Allison*, 59 F.3d 43, 46 (6th Cir. 1995); *United States v. Ashe*, 47 F.3d 770, 775-776 (6th Cir. 1995). In *Ashe*, the Sixth Circuit held that "any right, even a constitutional right, may be surrendered in a plea agreement if that waiver is made 'knowingly and voluntarily.'" *Ashe*, 47 F.3d at 776. *See also Allison*, 59 F.3d at 46. Knowing, intelligent, and voluntary waivers of the right to appeal or seek § 2255 relief are binding. *See, e.g., Watson v. United States*, 165 F.3d 486 (6th Cir. 1999).

I suggest that there is no viable basis for a contention that Petitioner's plea agreement or ensuing plea of guilty was anything other than knowing, intelligent, and voluntary. Because the plea was voluntary, the waivers that were included in the plea agreement are binding and enforceable. In light of Petitioner's explicit waivers, any appeal would have summarily been dismissed due to the waivers of the right to appeal in the plea agreement. Such waivers are part of the benefit the government obtains in exchange for allowing a defendant to gain the benefits of such bargain, and as noted above are valid and enforceable. *See, e.g., McNeil v. U.S.*, 72 F. Supp. 2d 801, 807 (N.D. Ohio 1999). The failure of petitioner's counsel to file a notice of appeal therefore did not manifest ineffective assistance of counsel. Moreover, as the agreements to waive these appeal rights came prior to Petitioner's plea, I suggest that under *Tollett, supra,* these waivers cannot serve as the basis of a § 2255 motion. As a result, I suggest that Petitioner's motion should be denied.

9

**b.      Ground Two – Timing of Plea**

Petitioner contends that he was advised by Mr. Street to plead guilty prior to the completion of drug treatment and a psychiatric evaluation.  Plaintiff asserts that this was significantly to his detriment, that his plea was not knowingly made, and that Mr. Street's advice constituted ineffective assistance.  In his supporting affidavit, Petitioner states:

> That I requested counsel to postpone my trial during the period I was in drug treatment program and to request the Court to order a psychiatry evaluation because my drug addiction have [sic] become a psychiatric problem instead of cosmetic addiction.
>
> Instead of seeking mental health assistance for me, and instead of requesting for continual [sic] of my criminal procedure, counsel advised me to my detriment to forgo [sic] trial and accept a guilty plea because, I cannot mentally sustain the stress associated with trial.

(Mot., Dkt. 36 at 8.)

In his affidavit, Mr Street states:

> At no time did Reco Mitchner ever request that I seek postponement of his jury trial in order for him to undergo psychiatric treatment or for him to enter a drug treatment program for an acknowledged drug addiction.  If the issue of psychiatric problems had ever come up, I would have promptly filed such a request.  To the extent that Mr. Mitchner did acknowledge having a drug use problem, he assured me that he was abiding by his bond conditions of remaining drug free.  That is why I presented his testimony to the court at the bond revocation hearing when he denied giving a "flushed" dirty urine sample to pretrial Services.  At no time did Mr. Mitchner indicate he was "mentally unable to sustain the stress" of a jury trial.

(Street Aff., Dkt. 40 at 4.)

Early in the plea proceedings, Judge Lawson asked Petitioner:

> THE COURT: Have you ever been treated for any mental illness or addiction to narcotic drugs of any kind?
>
> A      No, sir.
>
> THE COURT: Are you presently under the influence of any medication or drug or alcoholic beverage of any kind?

10

A        No, sir.

THE COURT: Very well, I find that the defendant is an adult and competent to plead.  Ms. Parker?

MS. PARKER: Your Honor, I have reason to believe the defendant has been treated for a substance abuse problem.  In fact, we had a bond violation hearing regarding that and he was sentenced to a more intensive program as a result.

THE COURT: All right, maybe you didn't understand my question.  You have never been treated for a mental illness, is that a fact?

A        Yes, sir.

THE COURT: All right.  How about addiction to narcotic drugs or any kind of drugs?

A        Yes, sir.

THE COURT: You've been treated for that?

A        Yes, sir.

THE COURT:  Would you tell me about that?

A        Like the use of cocaine and, like, this probation, I dropped a dirty and I had to go to DOT Caring Center.

THE COURT: How long ago was that?

A        January sometime, sir.

THE COURT: Of this year?

A        Yes, sir.

THE COURT: Did you go through a program there?

A        Yes, sir.  I'm still going through it, sir.

THE COURT: All right.  So you're currently in treatment for some substance abuse, right?

A        Yes, sir.

11

THE COURT: Do you understand that cocaine qualifies as a narcotic drug, and if you're in the DOT Caring Center, then you would be treating right now for a narcotic drug addiction; do you understand that?

A       Yes, sir.

THE COURT: Did you not understand my question before?

A       No, I didn't, sir.

THE COURT: That's all right.  You are not presently using narcotic drugs, however, is that correct?

A       No, sir.

THE COURT: When's the last time you had been tested?

A       Today, sir.

THE COURT: Did you get a result?

A       No, sir.

THE COURT: All right.  When's the time immediately before today you were tested?

A       Yesterday, sir.

THE COURT: That was negative?  In other words, it didn't show the presence of any controlled substance?

A       No, sir.

(Plea Tr., Dkt. 45 at 6-9.)

Under the Federal Constitution, "[a] criminal defendant may not be tried unless he is competent." *Godinez v. Moran*, 509 U.S. 389, 396, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993). The standard for competence to plead guilty is the same as the standard for competence to stand trial: whether the defendant has (1) sufficient present ability to consult with a lawyer and (2) a rational and factual understanding of the proceedings against him. *Id*. at 396-98.  A plea of guilty

is valid if entered voluntarily, knowingly, and intelligently; its validity is determined under the totality of the circumstances. *See North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Brady v. United States*, 397 U.S. 742, 749, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). Under these standards, I suggest that Petitioner's claims in this regard fail to pass muster. Review of the plea transcript clearly evidences Petitioner's consistently lucid answers to Judge Lawson's questions, and his understanding of the proceedings, their meaning and consequences. I therefore suggest that the timing of Petitioner's plea proceedings cannot be considered ineffective assistance of counsel on the part of Mr. Street.

        **c.**      **Grounds Four and Five – Sentencing Issues**

Petitioner asserts that Mr. Street failed to secure a stipulation that the drug quantities at issue were purchased by Petitioner for his personal use and not for distribution. Petitioner contends that this increased his base offense score 10 levels, much to his prejudice. Petitioner's plea agreement, however, states: "The parties stipulate to the following: (1) that the defendant is accountable for sentencing purposes for drug amounts in the range of 150 grams but less than 500 grams of cocaine base "crack cocaine" which is a base offense level of 34[.]" (Plea Agreement, Dkt. 24 at 2.)

In his affidavit, Mr. Street forthrightly explains the approach underlying this agreement:

(c) Stipulation of the drug quantities was tied directly to denial of the Motion to Suppress Evidence. Quantities of drugs were found after a car chase, in an apartment at 1014 Hancock, and as part of a hand-to-hand controlled buy that occurred three days prior to the arrest and search warrant execution on Hancock. The combined total came to 235 grams. The effect of the stipulation not being subject to direct appeal was fully discussed and falls within ¶ 6 of the Rule 11 agreement.

(Street Aff., Dkt. 40 at 3.)

At his plea, Judge Lawson directly confronted Petitioner about drug quantities:

THE COURT: You don't have to read anything if you don't want to, I want you to just tell me in your own words what you did.

A       I had crack cocaine.

THE COURT: How much?

A       A lot of it.

THE COURT: More than five grams?

A       Yes, sir.

THE COURT: All right.  What did you intend to do with it?

A       Sell it.

THE COURT: Okay.  When did that happen?

A       September 3rd.

THE COURT: All right.  I know these exact dates might fade in your memory a little bit, it was about nine month ago, but you believe it was around the end of September of 2002?

A       Yes, sir.

THE COURT: All right.  And did you know that when you possessed this substance, that it was crack cocaine?

A       Yes, sir.

THE COURT: And you knew that it was illegal to sell it, right?

A       Yes, sir.

THE COURT: Where were you when this happened, what city?

A       Saginaw.

THE COURT: All right.  Does the government have any questions concerning the factual basis?

MS. PARKER: No, your Honor.  Thank you.

THE COURT: Mr. Street?

MR. STREET: I'm not sure if it's necessary to get into the specific amount of drugs, we're stipulating it's well over five grams.  I don't know if we need to state the amount that was actually in the laboratory report.

THE COURT: Well as far as the elements are concerned, the quantity of five grams or more is all that I'm concerned about at this point.

However, Mr. Mitchner, there's a stipulation – which means an agreement – in the Rule 11 agreement, this plea agreement.  I'm looking at page 2 if you want to follow along.  It says that you possessed somewhere between 150 grams and 500 grams of crack cocaine; does that sound about right?

A      Yes, sir.

(Plea Tr., Dkt. 45 at 28-29.)

A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  *See also Cobb v. Perini*, 832 F.2d 342, 347 (6th Cir. 1987).  Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound strategy.  *Strickland*, 466 U.S. at 689.  "A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire [proceedings] with obvious unfairness." *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001).  Despite the strong presumption that defense counsel's decisions are guided by sound strategy, it is not sufficient for counsel to merely articulate a reason for an act or omission alleged to constitute ineffective assistance of counsel.  The strategy itself must be objectively reasonable. *Strickland*, 466 U.S. at 681.  I suggest that, in light of Judge Lawson's denial of the contested motion to suppress, Mr. Street's strategic decision to counsel Petitioner to accept a plea agreement acknowledging the amount and purpose of the drugs attributed to him was not only an appropriate and objectively reasonable approach, but one ethically compelled of Mr. Street.  The explicit

15

admissions made by Petitioner during his plea reinforce the correctness of Mr. Street's professional judgment.  As such, I therefore suggest that this advice cannot serve as the basis for an ineffective assistance claim against Mr. Street.

Petitioner also complains that Mr. Street failed to object to the court's imposition of a sentencing enhancement for obstruction of justice.   The offense conduct described in the Presentence Investigation Report sets forth the basis for this enhancement:

> A second police car continued to pursue the defendant.  MITCHNER stopped his vehicle.  The officers were able to position themselves by his vehicle in attempts to make an apprehension.  The defendant then tried to flee again, and in doing so struck one of the undercover vehicles.  After striking the undercover car, MITCHNER'S vehicle ran into a tree.  He was apprehended at this time.

(Presentence Report at 6.)

The matter was also discussed at Petitioner's sentencing:

> THE COURT: You do not contest – at least you have not filed an objection to the two point enhancement for obstruction of justice under the circumstances?
>
> MR. STREET: That is correct, based upon the fact that there was an automobile chase during the process of apprehension.
>
> THE COURT: Right.  I understand there's another ground asserted by the government, but I think that's moot for the purpose of this enhancement, in any event, since I will find that that enhancement applies.

(Sentencing Tr. at 5-6.)

In spite of this enhancement, Petitioner overlooks the fact that Mr. Street was nonetheless successfully able to convince Judge Lawson to give Petitioner credit for acceptance of responsibility.  (*Id*. at 6-7, 9.)  Under the standards set forth above, I am entirely unable to discern any ineffective assistance on the part of Mr. Street.

16

**4.      Request for Evidentiary Hearing**

Petitioner concludes both the instant motion and his opposition to the answer with a request for an evidentiary hearing. A § 2255 movant is not entitled to an evidentiary hearing if the § 2255 motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief. *See Green v. United States*, 445 F.2d 847, 848 (6th Cir. 1971). Because the record in this case effectively refutes the allegations made by Petitioner in the instant motion and its supporting documentation, I suggest that an evidentiary hearing is not necessary to determine the propriety of the instant motion. *See Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983).

**IV.   <u>REVIEW</u>**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

s/ *Charles E Binder*

CHARLES E. BINDER
United States Magistrate Judge

Dated: May 16, 2005

17

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Janet L. Parker, and served in the traditional manner on Reco Mitchner and Honorable David M. Lawson.


Dated:  May 16, 2005                                  By_____s/Jean L. Broucek_____
                                                      Case Manager to Magistrate Judge Binder